IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERTEX, INC., | : | |
|     Plaintiff, | : | No. 22-cv-0315-JMY |
| | : | |
| v. | : | |
| | : | |
| AVALARA, INC., | : | |
|     Defendant. | : | |

### Memorandum

**Younge, J.**                                                                                                        **April 5, 2024**

Currently before the Court is a motion for partial judgment on the pleadings filed by Defendant, Avalara, Inc. (Partial Motion for Judgment on Pleadings "MJP", ECF No. 90.) The Court finds this matter appropriate for disposition without oral argument. See Fed. R. Civ. P. 78, L.R. 7.1(f). For the reasons set forth below, Defendants' motion will be Denied.

**I.    PROCEDURAL AND FACTUAL BACKGROUND:**

    **A.    Procedural Background:**

In this lawsuit, Plaintiff, Vertex Inc., seeks a monetary award of compensatory and punitive damages along with injunctive relief for injuries that occurred when Defendant allegedly recruited individuals who were employees of LCR-Dixon. Plaintiff proceeds on four separate theories of intentional tort set forth in four separate counts of the Amended Complaint as follows: Unfair Competition / Corporate Raiding (Amended Complaint ¶¶ 59-66 (Count I); Intentional Interference with Contractual Relations (*Id.* ¶¶ 67-71 (Count II)); Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (*Id.* ¶¶ 72-81 (Count III)); and Violation of Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5302, *et seq.* (*Id.* ¶¶ 83-94 (Count IV)).

B.     **Factual Background:**

Both Plaintiff and Defendant operate in the same industry sector and are competitors who provide tax preparation and tracking software solutions to corporate clients.  (*Id.* ¶ 2.)  Defendant provides multiple products and services including software product and development, engineering, management, sales and strategic initiatives.  (*Id.* ¶ 8.)  This lawsuit arises from a bidding war between Plaintiff and Defendant to obtain a third-party company named LCR-Dixon.  (*Id.* ¶¶ 2, 26.)  LCR-Dixon was or is a small third-party company of 18 employees headquartered in San Francisco, California.  (*Id.* ¶ 14.)  LCR-Dixon provided intellectual property in the form of software and programs for use in tax preparation and bookkeeping.  (*Id.* ¶¶ 14, 16-18.)  LCR-Dixon developed and provided technology and software that can enable existing SAP compliance technologies/software to bridge or interface with various types of SAP compliance technologies and software programs – both old and new – so that the programs worked seamlessly together.  (*Id.*)  LCR-Dixon provided software and services to both Plaintiff and Defendant prior to acquisition on September 22, 2021.

Beginning in June 2021, Plaintiff engaged in discussions to purchase LCR-Dixon, a company with about 18 employees who were highly specialized in SAP compliance technologies/software.  (*Id.* ¶ 20.)  LCR-Dixon had developed tools, software, and programs to improve functionality and performance for SAP indirect tax technology, and which optimized the ability of tax products like Plaintiff's to integrate with a customer's existing SAP compliance software.  (*Id.* ¶¶ 18-19.)  Plaintiff further alleges that it had partnered with LCR-Dixon since 2014, and that LCR-Dixon's technology and software were extremely important to its product line and ability to service its customers.  (*Id.* ¶¶ 14-15; Decl. of Susan Soo ("Soo Decl.") ¶ 3.)

Plaintiff was ultimately the winning bidder that acquired LCR-Dixon on September 22, 2021 for nearly $100 million. (*Id.* ¶ 21.) Prior to the acquisition, on July 15, 2021, LCR-Dixon accepted a Letter of Intent from Plaintiff to purchase the company. (*Id.* ¶ 25; Soo Decl. ¶ 5.) Two months later, on September 22, 2021, Plaintiff executed a stock purchase agreement to acquire LCR-Dixon, which was publicly announced on or around September 24, 2021. (*Id.* ¶ 28; Soo Decl. ¶ 6.)

Plaintiff alleges that when Defendant lost out on the ability to acquire LCR-Dixon, it conducted a raid in which it attempted to recruit nearly all of LCR-Dixon's workforce. (Am. Compl. ¶ 27.) Prior to the acquisition and in the days following, Plaintiff alleges that Defendant attempted to recruit 13 of the 18 LCR-Dixon employees by making generous offers of employment. (*Id.*) Plaintiff alleges that six of the former LCR-Dixon employees joined Defendant's newly formed Enterprise Solutions team. (*Id.* ¶ 15.) Plaintiff alleges that Defendant was aware of Plaintiff's dependence on LCR-Dixon's technology and software. (*Id.* ¶ 15 n.2.) It further alleges that Plaintiff engaged in an intentional and unlawful campaign to recruit away from Plaintiff nearly the entire workforce of the company it had just acquired – LCR Dixon – in a transparent attempt to destroy its business operations. (*Id.* ¶¶ 28, 30.) Plaintiff alleges that Defendant planned the wholesale extraction of one of the most valuable assets belonging to LCR-Dixon – its people – which left Plaintiff with a mere shell of its $100 million investment. (*Id.* ¶¶ 27-32.)

## II.     LEGAL STANDARD:

A party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In deciding such a motion, the court must view the facts asserted in the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v.*

*Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993).  A motion for judgment on the pleadings will be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994) (quoting *Society Hill Civic Assoc. v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).  Essentially, the "court applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6) but may also review the answer and instruments attached to the pleadings."  *Snyder v. Daugherty*, 899 F. Supp. 2d 391, 400 (W.D. Pa. 2012) (quoting *Brautigam v. Fraley*, 684 F. Supp. 2d 589, 591-92 (M.D. Pa. 2010)).

### III. DISCUSSION:

In its motion, Defendant argues that theories of intentional interference with contractual relations and unfair competition should be dismissed from the Amended Complaint.  (Am. Compl. ¶¶ 59-71 (Count I & II).)  Defendant advances two primary arguments in support of its request for dismissal of claims.  First, Defendant argues that the facts, as alleged in the Amended Complaint, fail to establish that it acted with the sole purpose or motive of destroying or crippling LCR-Dixon when it engaged in efforts to recruit employees of LCR-Dixon.  Defendant then raises the competitor's privilege defense and argues that claims should be dismissed.

#### A. Tortious Interference with Contractual Relations (Count II):

Plaintiff set forth sufficient facts to establish a claim for tortious interference with contractual relations.  To bring a successful claim for tortious interference with contractual relations, a plaintiff must show (1) the existence of a contractual, or prospective contractual relation between the plaintiff and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the

occasioning of actual legal damage as a result of the defendant's conduct.  *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir.2004) (citing *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir.2000)).  Pursuant to the Restatement (Second) of Torts, which Pennsylvania has adopted, the plaintiff must also show that the interference was "improper."  *Crivelli*, 215 F.3d at 394–95; *see also* Rest. (Second) Torts § 767 (enumerating factors for courts to consider to determine whether conduct was improper, including the actor's conduct, motive, and interests).

Defendant argues that Plaintiff cannot sustain a claim for tortious interference with contractual relations because, as previously mentioned, Plaintiff has failed to assert that the sole purpose or motive in recruiting LCR-Dixon employees was to cause injury to Plaintiff (LCR-Dixon).  Defendant cites to what amounts to non-precedential dicta found in a decision reached by the Third Circuit Court of Appeals and a district court decision filed in the District of Columbia to support its argument that that Plaintiff must establish that its sole purpose or motive in recruiting LCR-Dixon employees was to cripple and/or destroy LCR-Dixon.  *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 182 (3d Cir. May 21, 2008) (non-precedential); *Economic Research Services, Inc. v. Resolution Economics, LLC. Economic Research*, 208 F. Supp.3d 219, 231 (D.D.C. 2016).

Plaintiff has pled sufficient facts to withstand Defendant's motion and will be permitted to proceed with discovery on its claim for intentional interference with contractual relations.  Plaintiff clearly avers that agents working for Defendant contacted LCR-Dixon employees with generous employment offers in an attempt to recruit them.  (*Id.* ¶10.)  Plaintiff specifically avers that Defendant contacted 13 of the 18 employees who worked for LCR-Dixon with employment offers.  (*Id.* ¶27.)  Plaintiff further avers that agents who worked for Defendant told the LCR-

Dixon employees, who they were attempting to recruit, that Defendant intended to destroy LCR-Dixon.  (*Id.* ¶¶4, 40.)  Purported statements to the effect that Defendant was attempting to destroy LCR-Dixon take on great significance given the fact that these statements were made during a period of major transition within LCR-Dixon – during Plaintiff's 100-million-dollar acquisition of LCR-Dixon.  If Plaintiff can produce evidence to establish that Defendant attempted to recruit nearly all of LCR-Dixon's workforce, under circumstances as described in the Amended Complaint, then it is very likely that Plaintiff will be capable of establishing disputed issues of material fact on the question of Defendant's intent and motive to purposefully cripple or destroy.

Defendant also argues that Plaintiff has failed to aver facts to establish the third element of the test for a claim based on a theory of intentional interference with contractual relations – absence of privilege.  Defendant argues that its actions were allowable under the competitor's privilege doctrine.  Defendant's logic is flawed when it attempts to have claims dismissed at this stage in the litigation based on the competitor's privilege doctrine.  Plaintiff clearly alleges that Defendant engaged in wrongful behavior and misconduct in the process of attempting to recruit or poach LCR-Dixon employees which is sufficient to overcome the competitor's privilege defense at this stage in the litigation.  *Symphony Health Solutions Corp. v. IMS Health Inc.,* No. 13-4290, 2014 U.S. Dist. LEXIS 114211, at *4 (E.D. Pa. Aug. 15, 2014) ("However the competitor's privilege does not shield a company from tortious interference with an employee bound by a covenant not to compete."); *Acclaim Systems, Inc., v. Infosys, LTD*, No. 13-7336, 2015 U.S. Dist. LEXIS 90937, *10 (E.D. Pa. July 14, 2015).

Plaintiff alleges that Defendant attempted to recruit LCR-Dixon's employees in an attempt to steal trade secrets (*Id.* at ¶27) which is conduct that is sufficient to overcome the

6

competitor's privilege defense. *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 676 (E.D. Pa. 2018) (concluding that the plaintiff stated a claim for tortious interference where it alleged that the defendant "received confidential data and trade secrets from [one of plaintiff's employees], knowing that her sharing the information violated her employment contract"); *Abira Med. Lab'ys, LLC v. Karim*, No. 20-cv-4317, 2022 U.S. Dist. LEXIS 1684, at *34 (E.D. Pa. Jan. 5, 2022) (denying motion to dismiss tortious interference and unfair competition claims where the amended complaint alleged that the defendant did not recruit plaintiff's employees on the open market, but instead targeted them and induced them to misappropriate confidential information in violation of their contractual obligations to plaintiff); *SI Handling Sys. Inc. v. Heisley*, 658 F. Supp. 362, 374-5 (E.D. Pa. 1986) (denying motion for summary judgment, "[I]f a jury finds that defendants misappropriated trade secrets and, for that reason, were able to induce plaintiff's customers to deal with them rather than plaintiff, those findings could support a judgment for improper interference.").

      Plaintiff alleges that Defendant deliberately ignored statements made by LCR-Dixon employees to the effect that if they went to work for Plaintiff they would inevitably use and disclose confidential information belonging to LCR-Dixon (Plaintiff). (*Id.* at ¶45.) Defendant allegedly chose to continue to recruit employees and encouraged them to violate any non-competition agreement that might be applicable to them by offering to pay their salary even if a court found them in violation of the agreements. (*Id.* ¶ 34.) Plaintiff further alleges that at least one of the employees who accepted an employment offer with Defendant had previously entered into an employment agreement directly with Plaintiff and was persuaded to breach the agreement. (*Id.* ¶¶ 41, 63.) According to Plaintiff, no fewer that two former LCR-Dixon employees took confidential trade secrets with them when they left to work for Avalara. (*Id.* at

¶¶ 5-6, 44–58.)   Vertex also alleges that Avalara recruiting tactics were harassing which included threatening to destroy the employer LCR-Dixon, repeated messaging on social media, calling and texting LCR-Dixon employees on nights and weekends.  (*Id.* at ¶¶ 28 - 29.)

For these reasons, the Court will deny Avalara's motion for judgment on the pleadings as to Plaintiff's claim for intentional interference with contractual relations.

B.      **Unfair Competition / Corporate Raiding (Count I):**

In the Amended Complaint, Plaintiff proceeds on the theory that Defendant engaged in unfair competition.  (*Id.* ¶¶ 59-66 (Count II).)  As defined in Pennsylvania common law, unfair competition is the "[s]ystematic inducing of employees to leave their present employment and take work with another" in order "to cripple and destroy an integral part of a [business]," or "for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers," rather than "to obtain the services of particularly gifted or skilled employees."  *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768, 771 (Pa. 1965); *Reading Radio, Inc. v. Fink*, 2003 PA Super 353, 833 A.2d 199, 212 (Pa. Super. Ct. 2003).

The claim for unfair competition asserted by Plaintiff survives Defendant's motion for judgment on the pleadings for all of the reasons previously discussed by the Court when it addressed Plaintiff's claim for intentional interference with contractual relations.  The amended complaint adequately set forth facts to establish that Defendant's sole purpose for recruiting almost all of LCR-Dixon's employees was to cripple or destroy LCR-Dixon (Plaintiff).  The Amended Complaint also sets forth sufficient facts to overcome the competitor's privilege defense by asserting wrongdoing and misconduct on the part of Avalara during the recruitment process.

Therefore, Avalara's motion on these grounds will be denied.

## IV.     CONCLUSION:

For these reasons, the partial motion for judgment on the pleadings will be denied.

BY THE COURT:

   /s/ John Milton Younge
Judge John Milton Younge

9